With regard to the Alvarado matter, Your Honors. I'm sorry? With regard to Alvarado. I thought we're not arguing Alvarado, I thought we were arguing Campbell. Oh, my mistake. Backwards. Initially, I would like to try and reserve 10 minutes. The initial problem with this case is that it was decided prior to the decision of the Supreme Court in Walmart, which focuses... I don't really particularly see the relevance. Go ahead. Go ahead. Tell me why we should care about that. We should care about the focus of where the court's going is, can we achieve an answer? Not what the question is, but can we achieve a dispositive answer? And I believe that cuts across all cases where we're looking for a multiplicity of parties to have their decision rendered in as simple as and easy a manner and as economically as can be done. Well, the question here is what, are these parties similarly situated, right? Which is? And the question is what standard should apply? Yes. As I understand it, there is no case on point in the Ninth Circuit on interpreting what substantially, similarly situated means, correct? Yes. Or on the procedures to be followed or anything. We're starting from scratch. So I think it would be helpful if both of you treated this as if we were starting from scratch. In other words, we don't have to accept anything that's out there, which is mainly in district courts anyway. And I'd like to know where we should start and what should be the standards. We should start with the focus point in the case, which is swift and economical jurisdiction. One of the fundamental precepts of the Federal Rules of Civil Procedure. If we're going to start with that precept in mind and an economy of litigation... Counsel, how can you say economy of litigation? Judge Fees held exemplar trials and it was a disaster. It went on for days after day after day. There were scores of witnesses. This is anything but economical. How can you say it's economical? Because in most of these cases, partially, you can adjudicate them on summary judgment when you have strict evidence. But counsel, with respect, this case and the other case, it really is a question of what the supervisors knew. The testimony, at least by the affidavits, is that everybody had different supervisors, many times different supervisors within the same day because they were going to different divisions. It's a morass. I can't agree with that for one reason, Your Honor, and it's very simple. Let's take the first issue in this case. We have peace officers who are not allowed to take Code 7, which is their lunch breaks, which you may have noticed in our pleadings. Some say they couldn't, some say they could, etc. There were people who were paid overtime for Code 7s, there were people who weren't. The reality is, in the initial phases, they deducted for anyone, regardless of whether or not they got a Code 7, they do not keep the mandate of... I'm sorry, I don't understand what that means. What do you mean they deducted? A patrol officer is working... All right, what did they deduct? They deducted a half an hour or three-quarters of an hour, depending on what their Code 7 time would have been, without regard to them having... And depending upon what precinct, what supervisor, what circumstance. The evidence suggests to me that these are all different. Well, this is the fourth case I've tried, Your Honor, on LAPD, and the first time they've tried to do this individualized supervisorial liability concept. But the knowledge is imputed, first, and second, it's not a delegable knowledge. Mount Clements Pottery makes it very clear. The duty is on the employer to track hours worked, not vice versa. So when we walk into this case, we walk in, and within the first seven or eight months of this case, back when, when I first filed it, we made a motion for summary judgment. Because it was that basic and that simple. And what happened? And the judge deferred it. Well, maybe you could divide this case into pieces, and maybe it should have been divided into cases. But I have a sort of global question here. Okay. The way these cases tend to work now is you finish discovery. You finish discovery, right, on the merits of the case, right? No. Normally, you're supposed to finish the discovery as to whether or not certification... Is that true? This was not the actual discovery in the case? The actual discovery was carried into place by the defendants, which was our contention. By doing that, they waived the right to seek decertification by doing merits-based discovery. I don't know what you mean. I mean, at least in reading through the cases, it seemed to me that the concept seemed to be that you were actually doing the discovery in the case. And this constitutes you did do the discovery in the case, right? Yes. All the discovery. Yes. All right. And then the district judge concluded on the record that you hadn't established an implicit policy. Why isn't that just summary judgment on the merits? Why are we even talking about a decertification? Because it wasn't a summary judgment, Your Honor, and it could never have substituted itself in. First, as the Court may understand, the LaRoche case is basically a stepping stone to attempt to simplify. But there is no requirement... How should we follow that case? No, please talk about Hoffman. Okay. I'm sorry. Hoffman LaRoche. The problem with the Hoffman standard is it's not mandated, as I pointed out in my brief. I don't know what difference it makes. It was followed here. You had complete discovery, and the district judge found that your central point, which was that there is an implicit policy not to take small amounts over time, was not established on the record. So why isn't the case just... And that's the ground for having a collective action. And why aren't we just talking summary judgment? Why are we even here? You still haven't answered my question. Because summary judgment is Rule 56, and it is not the standard that I was presented, and... What's the difference? Because in the summary judgment, my side, the plaintiffs, has all inferences that are factual left open to be tried. You can't go beyond... You don't think he... You think he found it... He found factual findings rather than simply establishing that you just hadn't sustained your burden? That there's no way that... In other words, you think he applied something other than a summary judgment standard? Absolutely, Your Honor. Rule 56 is a draconian remedy. The courts have talked about it. We're aware of it. I happen to know what Rule 56 is, but let's go on, okay? But the point I'm making is the right to a collective action is statutory. And that statute prefers them because otherwise... I understand that, but I'm asking you why, the way this thing has evolved, where we have these two stages, and the second one is after discovery is completed, and where one would ordinarily have summary judgment. Why don't we just have summary judgment? I agree. Why didn't we? Well, we didn't. We just... I'm not sure we didn't. It seems to me that what he held was essentially a summary judgment standard. Well, then he'd have to give notice and opportunity to be heard and do the pleadings necessary. He never gave notice this was a summary judgment. This was a defendant's motion to decertify a class. Right. The evidence does not need to be rock solid. That's why I was leaning first and foremost to the decision at Walmart. It doesn't have to be rock solid, but it has to be sufficient to sustain your burden. Yes, and we sustain our burden with hundreds of affidavits filed early on in a case. Which are internally inconsistent in many instances and clearly point out, other than your implication concept, that you had different people in different divisions with different supervisors even within the same day. Yes. Even under you cite Walmart versus Duke. I don't see how that helps you. Well, back up a second if I could, Your Honor. Okay, sure. Let's go back to what we're looking at in this case. We're looking at a policy that's taught from the day of the academy that you will not turn in overtime for less than an hour. Do you have any evidence of that policy? Yes. Coming out of somebody's mouth? Yes. It's in the declarations. The declarations that I saw were just these form declarations where people filled in some blanks, and I don't remember seeing that. That's in there. But they were verbally told this. Yes, that's what they have been told since I started representing LAPD 40 years ago. But, counsel, perhaps I misunderstood, but I thought that the department, meaning the police department, had a FLISA-compliant written statement in all kind of handbooks and so on that said if you're going to have more than six minutes worth of overtime, you have to get the permission of the supervisor. Is that correct or not? There is a policy that says that.  And it's written. Okay. But that's not the policy that's followed. Okay. But the reality is it's your burden, right? Since they have that policy in writing, it's your burden to show that this was not what they did. And you've got these form affidavits, as my colleague pointed out, almost identical except the names are different. The judge didn't give much credence to that because they were just form documents. How are we supposed to deal with that? Do you carry your burden or not? Let's deal with the burden that I have. I have no burden to prepare the time records for actual hours worked. That's the burden of the employer by statute. I have no burden to make sure that some supervisor, who may or may not be there on one day or another, is complying with that responsibility. But you do have a burden to establish and provide sufficient evidence to show that there is some sort of an unwritten policy that overrides what everybody agrees is a clear written policy. Even if that were my burden, Your Honor, it would not be my obligation to tell my client or anyone when they can do that. That's the employer's absolute burden in that regard. They have to produce a time record showing when and where they worked. But the declaration, I don't see that it says anything's coming out of somebody's mouth. It was the policy and culture taught to me by the academy, my training officers, my colleagues, and my supervisors that I do not submit for overtime for anything under an hour. Right. I didn't understand that to be that somebody said it to him. Is that what you mean to be saying? Yes, Your Honor. You never say so-and-so told me that. They're trained in the academy. They're trained in the field training program by what's known as field training officers. This is the danger of passive voice. There's no active voice statement in here about, you know, John Smith, my supervisor, in 2012 told me. There's nothing specific about who said what to whom when in this declaration. It's just a general statement in a passive voice, historically. Historically, when? Historically, it's been the policy, practice, custom, usage, and culture. When he went to the academy as a recruit. First of all, we don't know when he went to the academy. And we do know that starting around 2002, the police chief put out several different emphatics. I mean, these didn't just say you were supposed to take your overtime. They said there is no unwritten policy. You must take your overtime. If you don't take your overtime, you can be disciplined. And they said that several different times. So if we can't relate that to this time period, then you haven't demonstrated that this training had anything to do with the relevant time period. This training not only continued, but the affidavits and declarations and evidence that we put in would, in fact, post-date the 2002. And this is from the beginning of my career at the academy. These are all form declarations, right? Yes. From the beginning of my career at the academy. I don't know when that was. It was the policy and culture taught to me by the academy. I don't know whether that was before or after the LAPD apparently, at least to the highest levels, got serious about this. And I don't see where it says that they continue to be talking about it. It's all, as Judge Lynn says, passive, nonspecific. Also, you have no, absolutely no statistical evidence here. We didn't get to that point. And no survey. The surveys are what the surveys are, but they're not statistical. We didn't bring a statistician in for a motion to decertify. The purpose of the motion is to determine, can a common answer resolve the common question? My problem, my main problem so far is that the district judge answered that question, no. I mean, he answered it in the guise of the motion to decertify and I think maybe shouldn't have. But he emphatically answered it, no, on the record that you had, which was a record on the complete discovery record. So that's where I just keep getting hung up. Well, it wasn't. First, let's be honest. It wasn't a complete discovery record. Why not? Because we were waiting for them to finish their motions for decertification. I thought you told me that this was the discovery on the merits had been completed. Huh? I thought you told me the discovery on the merits had been completed. They had completed their discovery on the merits and not merely limited it to the discovery on whether or not there could be a collective action. I understand that. That's what I'm saying. I'm not saying we finished ours. I thought the deadline was over. Not at that time, no. It wasn't? No. Not to my recollection. All right. If you want to reserve some time, I suggest you do so. Yes. Thank you, Your Honor. Good morning. Excuse me. Good morning, Your Honors. The first thing I want to, the first point I want to make. Make your appearance, Counsel. Oh, Brian Walter, appearing on behalf of defendants, City of Los Angeles. And the first point that I want to make is that the point at which these decertification motions were made in the Allenies and the two different cases that are combined part of this appeal, these were made 10 years after the initial lawsuit was filed. And there had been extensive discovery, extensive motions. Was there a discovery deadline? There was a discovery deadline. I don't know offhand if the discovery deadline had passed when the motions were made, but it was very close if it had not already passed. And the purpose of making the motions was to see whether or not the case should go to trial as a collective action or not. And was anything, it always troubles me when you back the merits up into either a class action or a collective action. And in one sense, that's what happened here. But in the other sense, one could view this as being the merits. Is there anything that happened here that was different than if the district judge has just decided the question of whether there was an implicit policy on summary judgment? The only thing that may have been different is there weren't necessarily specific analysis of whether or not there were factual disputes. I mean, the district court did make factual findings, which we believe are subject to a clearly erroneous standard of review. But it's factual findings without any live testimonies, which is an odd business. Without any live testimonies to the decertification at that point, yes. There was eight days of live testimony in the Nolan case, which is the same issues in the same department that Judge Feese had presided over three years before. Well, I mean, the briefing in this case all assumes that we're going to follow some district court opinions, which we're not. Necessarily. So I would like to know what you think the base, A, there's this assumed two-stage process. I guess we can assume we're going to follow what everybody does, but we haven't. But the second is, what standards apply at this point? I mean, some of the cases put out these three factors. The three factors don't necessarily look to me like, do we want three factors, or what do we want? How do we decide what governs here? I think, I mean, as you know, there is no governing Ninth Circuit. All right, so I want you to give me some guidance. I think those three factors are a. Why? Why, for example, is the fact, I mean, they just seem, it often happens with three-factor tests. Somebody made it up out of a particular set of circumstances, and then they keep getting transposed to others. So, for example, the fact that there are various locations and different job categories and so on, could matter a lot in some circumstances, maybe in this one. And in others, it would not matter at all, because if you had people in a lot of different places, but an announced policy that we're not going to pay overtime for X, it wouldn't matter where people were, right? So why are we looking at that? Why is that a factor by itself? Well, it's a factor here because of the law that applies here. I didn't ask you that. I want to know, should we just go ad hoc? I mean, how do we decide what similarly situated is in this circumstance? First of all, similarly situated, not identically situated. And then there's this factor about efficiency. What's the second supposed factor? Well, the defenses that are available. Oh, the defenses that are available, okay. And then fairness and procedural considerations would be the third one. Which is totally vague. I don't know what it means. It doesn't sound like a very useful standard. So what standard should we apply? Well, I think when you look at those three factors, that's essentially a totality of the circumstances. Well, should we consider the question what would happen if it isn't certified? What would happen here? I mean, I understand the concern that these are very unwieldy. But if they're very unwieldy, then if you have ‑‑ I mean, here's the truth of the matter. If you had 2,500 of these cases, it would be really unwieldy, right? Right. So it has to be that what really is going on is you're thinking, well, you're hoping that we're not going to be 20. The court's hoping there aren't going to be 2,500 of these cases because nobody's going to be able to afford to bring the case and it's not going to get brought. So shouldn't we consider the question of whether there is another feasible way to try these cases? Well, there is, and that's you dismiss and let the plaintiffs file individual cases. But we all know they're not going to. But what happened here? Well, what's the answer to that? I mean, since ‑‑ and if they're in fact ‑‑ if this case would not survive summary judgment. I mean, would not ‑‑ would survive summary judgment as to whether there was an implicit policy. I mean, in other words, you're not prepared to say that the district judge here applied summary judgment standard and found that they couldn't ‑‑ that there's no chance they could establish this. Instead, he found the facts. If you applied a summary judgment standard and the case would go forward as to whether there was an implicit and I don't know if that's true or not because he didn't find that. He didn't ‑‑ you're telling me he didn't do that. But if he would have found that although he would decertify it, he wouldn't find that they lose on summary judgment. Then what you would have was 2,500 cases trying to establish whether there's an implicit policy. Is that efficient? Well, but you ‑‑ Or you wouldn't in fact because we know they wouldn't bring them. So people are going to be closed out of court even if there may have been such a policy. Well, I want to go ‑‑ on the issue of the implicit policy, I mean, Judge Feese did find there was no implicit policy. He didn't specifically cite to the Rule 56 standard. But what the 2,500 individual cases were going to decide is did that particular employee have a situation where his supervisor or her supervisor knew or should have known. Well, no, I mean, why couldn't each of the 2,500 cases try and establish that there's an implicit policy? Because then what do you do with the implicit policy? What do you do with the other 2,400 or 99? I mean, in other words, if this is not a summary judgment decision on the merits, then each of the 2,500 people theoretically could bring a case and each could try to establish that there was an implicit policy. And you would have a risk of conflicting decisions in that point about a policy, implicit policy, but Judge Feese did find in this case whether you want to say it was summary judgment or not. That's where I started, which is why didn't we just do this on summary judgment? It would be a lot cleaner. Well, and this is, again, a situation where there's no defined, there's nothing in the Federal Rules of Civil Procedure about how you handle an FLSA collective action. And so I would entertain the possibility of sending it back, I understand, not to Judge Feese because he isn't there anymore, to do the merits and summary judgment. And I think we'd all be a lot happier. Well, you'd be back and looking at the exact same evidence and just looking at whether— You just told me that he'd applied a different standard. He didn't apply the summary judgment standard. He didn't find whether there were disputed facts. I mean, I think maybe he did. I think he thought that there just wasn't enough here no matter what. But if he didn't exactly say that, maybe somebody should exactly say that and we could all go home. Well, you know, I can't—Judge Feese wasn't looking at—he was looking at this from a decertification standpoint based on other cases that looked at that. I understand that. If you look at it from a decertification standard, all these 2,500 people theoretically could bring the same case with the implicit policy because there certainly wouldn't be issue preclusion as to whether there's an implicit policy because you're telling me it wasn't decided on the merits. But the problem with that, Your Honor, is when you talk about implicit policy, when you're looking at individual people, it doesn't matter whether there was an implicit policy or not. The question for them is what did their supervisor know? Did their supervisor know that they worked uncompensated overtime or not? It's still relevant whether—I mean, if somebody actually came in and said, when I went to police academy, they told me no matter what's in a piece of paper, don't put in— you know, it's a bad idea to put in small amounts of time or if that was—or if they established that they were told that by all their coworkers and people who did it got yelled at or got demoted or something, that would be relevant to whether they were properly not paid overtime or not. Well, but as you noted earlier in your questioning of appellant's counsel, whatever happened in the academy, which for some of these people was 10, 20, 30 years before the incidents that are at issue in this motion, when during the relevant time period you had the police chiefs putting out memo after memo, they put out a—Police Chief Bratton put out a five-minute video saying, you shall not work uncompensated overtime. This is a violation. You had employees disciplined and fired for working—for violating this rule. Record that there were such people actually disciplined. Yes. We presented that in the decertification motion. There were actually employees who were fired for violating the overtime policy by not reporting overtime. And there's—we submitted evidence of—there was even a plaintiff's declaration that plaintiffs submitted of a sergeant, who was a plaintiff, who said that they would never let one of their subordinates work uncompensated overtime. They made sure that if they worked less than an hour, they got paid for all overtime work. Counsel, I want to change the focus just for a minute. One of the things that Judge Feist cited was the Reed case, which dealt with Orange County, but substantially similar allegations. What, if anything, should we take from that case, the way that was disposed of? Can we learn anything from that? Well, I think it was—that was the same procedure that was followed in this instance. And in the Reed case, what happened was the deputies in that case, there were about 800 or so plaintiffs in that case who were sheriff's deputies. The case was decertified like this case, and they were told that they had 60 days, or I think it was 60 days, to file a new lawsuit. 130 of them did file individual lawsuits. Those cases were consolidated and eventually settled. So, I mean, that's—as far as what to learn from that, it's the same thing here, which is the 2,500 individual plaintiffs could have filed individual lawsuits. They didn't. They instead filed sort of these mini-collective actions along the same lines as this case, which were also dismissed. But, of course, the implicit policy question is the question that runs across all 2,500 officers' potential cases. So I find it difficult to see how it would be efficient to decertify the case when the case could have been preceded as a collective action, and then the case bifurcated to have some consideration of this question about, is there an implicit policy on the merits? Which could be done in the current record. With witnesses and evidence and the whole gamut, and just decide as a common question whether there's an implicit policy or not. And then once that's decided, if the conclusion is that there was such an implicit policy, then each individual circumstance could be addressed one by one. And I suspect lots of them might drop out. Well, but that's effectively what happened here. That's what Judge Fees did. It just was called a decertification motion, not a motion for summary judgment. It wasn't a full trial on the merits. It wasn't supposed to consider the merits at that point, correct? I wouldn't agree with that. He was considering the merits of the argument because the... Considering the facts, the factual presentation, to determine whether there was sufficient evidence to support that argument, right? Correct, yes, he was. So what standard should he be applying? The summary judgment standard we've been talking about? Sort of like a J-mall? Is there sufficient evidence to present this to a jury or not? Well, first of all, yes, I think he was looking at whether there was sufficient evidence of an unwritten policy. That is the summary judgment standard, right? Yeah, same standard. Same standard. I mean, I guess you could say that, yes. There isn't. The standard in summary judgment is, has the non-moving party presented enough evidence to meet their burden of proof if their evidence is believed to go to a jury? So it's a sufficient evidence standard, right? Yeah, I guess I would agree that that's effectively what Judge Fees did here. Isn't the reality that whatever we want to call this, Judge Fees looked at the affidavits that were presented and found that they were essentially boilerplate affidavits that didn't focus on who, you know, what, when, where, how, and which supervisors were involved and so on, and that they had simply not met their burden, and therefore under summary judgment or any other standard, that the plaintiffs had not met what they had to prove and it was not going to go forward. Isn't that what happened? That's correct. And that standard, I mean, doing it that way, i.e., getting to the merits, acknowledging that you're actually deciding the merits, is to your advantage as well, right? Because then you have an issue preclusion on the issue. If you win. And you don't have to litigate it in 2,500 cases. It's to our advantage, but it's still, for each individual plaintiff, they still have the, if there is no unwritten policy, they still have the issue of, did my supervisor know? There's an unwritten policy. Let me ask you something. You haven't addressed at all the appealability question. Are you going to or do you care about it? I care about it, yes. It's very interesting, actually, and we need to decide it. So I would like to know what you think. Well, I think that since the plaintiffs in this case, or the name plaintiffs settled out, and the parties that appealed the decertification order had actually been dismissed, so as we noted in our briefing, they were not even. Does that make any sense? Because the only people who really care about this now are not the person who settled out, but everybody else who are party plaintiffs according to the statute. That's what it calls them, right? They actually opted in. They are in the case. And why can't they appeal the fact that they've now been thrown out of the case from the final judgment? Because that's when you appeal things like that. You don't appoint them interlocutorily. I suppose everybody would be perfectly happy if we said you could do it interlocutorily, but that would be inconsistent with the case law on class actions and with some of the case law on intervention, and usually you appeal at the end of the case. What's wrong with that? Well, in this particular instance, because they then went and filed separate actions, and that's the subject of the other appeal that's in front of you, are the other actions that they went and filed. So then you have a situation where they're in two different cases, apparently serving the same rights. Obviously, if we reverse here, they'll just walk away from the others. They don't want those others. They wanted this. True. I mean, that's true. Is there any conceptual? The Third Circuit got itself all bollocked up in a very complicated set of these Hall cases, which ended up seemingly with a very peculiar result, which is that these people never got to appeal the fact that they were thrown out of the case. Does that make sense? Well, in this case, it makes sense because when they were dismissed from the collective action, I mean, they don't necessarily have some sort of inherent right to be part of the collective action. Well, I know, but if you have an intervener, right, a putative intervener who wants to intervene and isn't allowed, they're never even coming to the case. But they still, my understanding is, have some way to attempt to appeal the fact that they weren't allowed in. I think an intervener is a little bit different situation because they were, although they were at one point, had opted into the case, when they opted out, they were dismissed without prejudice, and the district court specifically told. They didn't opt out. They were thrown out. They didn't want to be out. They wanted to be, but they were dismissed without prejudice to doing something else, but not without prejudice to doing this. I mean, that's, they couldn't go back and file another collective action, could they? No, that's the point of the second appeal. So they, therefore, were precluded from doing this. And they had opted into this. But when you say this, the right that each individual plaintiff has is the right to pursue their FLSA claims. That was not impacted. But you're saying, but why don't they have a right to pursue it within a collective action if they're properly in a collective action? The statute says that similarly situated people can opt in as party plaintiffs. But they're not. They purport to have done that. But they're not similarly situated. That's what Judge Keese found. But that's what they want to litigate. Well, but. That's what they want to ask us. They were thrown out of this case on the ground that they weren't similarly situated. They say they were. And they want, they're asking us to let them stay in the collective action because that's how they think they can litigate better. So the fact that they can go do something else isn't much of an answer. Well, I think it is because that statute, the FLSA, provides for the right for that plaintiff to vindicate his or her rights. But that's so cynical because you know that they can't afford to do it and they're not going to do it. That's not true. I don't agree with that. With all due respect, Your Honor. Counsel, can I ask you this on the appealability question? I don't see that any of the parties has raised this issue, and certainly no one has briefed certainly about the collateral order doctrine. Does it make any sense for us to get involved in the appealability issue in this case because nobody raised it, nobody briefed it? You briefed it. Yes. I mean, we briefed the appealability issue. Collateral order doctrine? No. That's what I'm talking about. And I'm not following exactly what you're saying. My question is this. We're talking about whether this aspect of the case, in effect, is ready for us to make any determination. I don't believe anybody raised this aspect of it. And one of the ways that you get to appeal, at least potentially, is following the collateral order doctrine. Does that fit, as my colleague mentioned earlier? I didn't see any briefing on that. Did I miss something? I don't believe there was any briefing on the collateral order doctrine. Okay. I just want to go back for a second to Judge Fee's decision on decertification on the motion. And what standard of review should we apply, abuse of discretion or de novo? I believe it should be abuse of discretion. And why? Because it's not an issue of law? Well, it's an issue that Judge Fee's made factual findings. The sufficiency of the evidence. The sufficiency of the evidence for the case to proceed as a collective action. And the determination as to the sufficiency of the evidence there is something that is really inherent in the district court's case management responsibilities. And the ability of the district courts to manage their cases is reviewed with an abuse of discretion standard. Thank you. Thank you very much. I will try and be brief. I think one of the major questions that's come up in this hearing is, what is the proper allocation of the burden on a motion to decertify? And here, what I think I have a primary concern about is the skewing of my client's burden of proof. Particularly, I refer to the seminal case of Mount Clemens Pottery. That case makes it very clear that we... What court decided Mount Clemens Pottery? The United States Supreme Court, I believe, 1946. I don't know what that case is. What is it? It basically talks about what is needed to prove a claim. And an estimate is enough for a plaintiff to prevail in an FLSA claim. An estimate. Is that an FLSA case? Yes, Your Honor. It is the seminal... An estimate of what? Huh? I mean, of time worked. An estimate of what? The actual hours worked uncompensated. Okay, fine. So what? So that is their burden to address for two reasons. One, it is a non-delegable duty. You may not delegate the record-keeping on overtime to people who have no idea how to track it. They have no training. It's not their job. And I will tell you right now that... You didn't structure this case, as I understand it, as a structural case, in which you said that, and I don't think you proved, that the system that was set up to determine whether people were working overtime or not was an inadequate system, that the people on the top were not monitoring the people on the bottom adequately. That's not really the way you set the case up. You set it up as saying that there was an implicit policy not to do this. Somebody was telling people, or they were understanding that they shouldn't do it, rather than what was probably really going on, which was that the people at the top really didn't want them to do it, but some of the people at the bottom weren't... in the middle weren't following that, and the people at the top perhaps weren't monitoring it enough, but you don't get that. That's not the way the case is structured. But that's the way they argued it on the other side, and that's the way the judge structured it, and that's the argument... That's the way they argued it on the other side. I'm sorry. What is the way they argued it on the other side? They argue that it has to be somebody above a supervisor that can tell you not to work or work. That's not true. The judge fell for that line, honestly, and he attempted to put it onto our back to show that overtime had or had not been worked by people who have no idea what compensation in overtime under the FLSA with comp time and all the intricacies of collective bargaining. They have no clue. I didn't understand him to fault you for not having come forward with evidence of people having worked overtime and not getting paid. I think it seemed to be common ground that that was somewhat true of some people and not of other people. He wasn't saying it wasn't true. He was saying that it wasn't true pursuant... You hadn't proven that it was true pursuant to an implicit policy, whatever that means. It wasn't very clear to me what you meant by an implicit policy. I mean, it turns out in the declarations that in this passive voice way you seem to be saying that it wasn't implicit, it was explicit. Yes, it was explicit. You never said that in the briefs. You always said it was implicit, whatever that means. Well, we say it's explicit, but we moreover say that when it comes to doing a payroll record, it is affirmative control. I cannot come to work and be responsible for determining when I worked overtime or not overtime. You can't be responsible for writing down every hour you worked. You can't be responsible for writing down and handing in every minute you worked. Surely, but that's not what happens, and that's where the issue rubs. And the other part that I'd like to make, and then I'll be quiet. Code 7, we allege Code 7, and they acquiesced and corrected it three and a half years later to stop that violation. So just on that issue alone, decertification was a problem. Okay, thank you very much. Thank you. You may both sit down, reconstitute yourself, and start again. The case of Campbell v. City of Los Angeles, the committee will go to Alvarado.
judges: Berzon, M. Smith, Linn